IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JAMES P. KLAGES, JR.,

    Plaintiff,

v.                                   CIVIL ACTION NO. 3:09-00840

RENAE STUBBLEFIELD, Administrator,
and RICK SMITH, Business Manager,

    Defendants.

## **PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff, James P. Klages, Jr. ("Plaintiff"), is currently incarcerated in the Huttonsville Correctional Center in Huttonsville, West Virginia.[1] On July 22, 2009, Plaintiff, proceeding *pro se*, filed a Complaint in the above-captioned case and applied to proceed without prepayment of fees or costs against the administrator and business manager of the Huntington Work/Study Release Center ("Defendants") where he was in custody prior to his escape and incarceration in the Huttonsville Center. (Docket Nos. 1 and 2). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] West Virginia Division of Corrections website. According to the website, Plaintiff's projected release date is 6/30/2012.

1

I.  **Introduction**

Plaintiff alleges that Defendants violated the State of West Virginia Division of Corrections Policy Directive 111.06 pertaining to the financial responsibility program for inmates. Policy Directive 111.06 allows a Warden or Administrator of a State correctional facility to deduct up to forty percent of an inmate's earnings to meet that inmate's financial obligations. According to Plaintiff, Defendants improperly deducted 40 percent of his ***total earnings*** for work he performed while he was employed in the Huntington Work/Study Release Program, when they should have limited the 40 percent deduction to the "***current earnings***" contained in his spending account. As a result, Plaintiff contends that Defendants deducted excess funds in the amount of $148.86. (Docket No. 2 at 3-6). Plaintiff states that this violation deprived him of "monies and property without due process of law in violation of Article 3 Section 10 of the WV Constitution and the 5th, 8th, and 14th amendments of the US Constitution." (*Id.* at 3). Plaintiff requests the Court to order Defendants to pay him $148.86, which he defines as reimbursement for the amount wrongfully taken from him, plus $5,000.00 for his "undo financial anguish and stress and mental anguish that this whole issue" caused him. (*Id.* at 6).

II. **Standard of Review**

Pursuant to the provisions of 28 U.S.C. § 1915, the Court must screen each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The Court must dismiss the case, or any part of it, if the Complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from

such relief. 28 U.S.C. § 1915. A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967); *Denton v. Hernandez,* 504 U.S. 25 (1992), or lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Likewise, a Complaint fails to state a compensable claim, and therefore should be dismissed, when viewing the well-pleaded factual allegations in the Complaint as true and in the light most favorable to the plaintiff, the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court further clarified the "plausibility" standard in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

This Court is required to liberally construe *pro se* Complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the Complaint still must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>Analysis</u>

The State of West Virginia Division of Corrections ("WV DOC") Policy Directive 111.06 draws its authority from West Virginia Code §§ 25-1-3c and 25-1-

5. The purpose of Policy Directive 111.06 is to ensure that "inmates meet their financial obligations including, but not limited to, child support, restitution, and other court ordered obligations."[2] Policy Directive 111.06 states that upon intake and initial classification of an inmate into any WV DOC institution, facility or center, or as soon as reasonably practicable thereafter, the Warden or Administrator shall ascertain whether an the inmate is subject to payment of court ordered child support, restitution, or other court ordered financial obligations. Upon verifying the existence, nature, and amount of such financial obligations, the Warden or Administrator shall provide written notice to the inmate that in 60 days following the date of the written notice, the "Warden/Administrator shall begin deducting forty percent (40%) of the inmate's earnings (as defined in this policy) in order to meet the inmate's financial obligations." The notice should include a definition of "earnings" under the policy[3] and should advise that the inmate may challenge the appropriateness of the deductions by filing a grievance pursuant to Policy Directive 335.00. The policy further outlines how the funds deducted are to be applied to the inmate's financial obligations. Finally, the policy directs the Warden or Administrator to

---

[2] Phrases in quotations are *verbatim* excerpts taken from the Policy Directive.

[3] Policy Directive 111.06 defines earnings as the following:

> All sums of money paid to an inmate on account of any work assignment, or other allowable means by which an inmate may be compensated for work performed or goods sold, including earnings from work in correctional industries and indigent pay. Earning[s] shall also include 40% of the proceeds from any arts and crafts sale. Earnings shall further include all sums of money received by the inmate on account of a settlement of a lawsuit; civil judgment; or other lawful process, inheritance, bequest, gift, except funds provided [to] the inmate by family or friends. Earnings shall not include sums deducted for mandatory savings.

4

maintain detailed records of all monies deducted from the inmate's earnings and all monies paid out from said deductions, including the amounts paid and the payees of said money.

As previously stated, Plaintiff's sole claim in this action is that Defendants violated Policy Directive 111.06 by deducting 40 percent of his "total earnings for work performed while employed at the Huntington Work Release Center," rather than limiting the deductions to his "current earnings" contained in his spending account. Plaintiff does not contend that he had no financial obligations; or that the money deducted by Defendants exceeded his debts; or that he did not receive the notice; or that he was denied an opportunity to file a grievance; or that the Warden/Administrator failed to keep detailed records of the deductions. Instead, he complains that after he escaped from custody, Defendants calculated the amount of the final deduction by using his "total earnings," rather than his "current earnings," causing the deduction to be more than forty percent of the balance contained in his spending account. However, the Policy Directive does not limit Defendants to "current earnings." Rather, the Policy Directive explicitly provides that the deduction is to come from the inmate's "earnings," which includes "**all sums of money paid to an inmate** on account of any work assignment," as well as "sums of money received by an inmate on account of a settlement of a lawsuit; civil judgment; or other lawful process, inheritance, bequest, gift," with the only exclusions being funds "provided the inmate by family or friends" or "deducted for mandatory savings" (emphasis added). Plaintiff does not assert that Defendants used funds provided by his family and friends to pay his financial obligations, or that Defendants included amounts

5

deducted for mandatory savings in calculating his earnings for purposes of the Policy Directive. Accordingly, by Plaintiff's own account, Defendants complied with Policy Directive 111.06. As such, Plaintiff's Complaint is frivolous and fails "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp., supra.*

Therefore, the undersigned respectfully **PROPOSES** that the United States District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### V.    Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the United States District Judge accept and adopt the proposed findings and **RECOMMENDS** as follows**:**

1. Plaintiff's Complaint (Docket No. 2) be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii); and

2. Plaintiff's application to proceed without prepayment of fees or costs (Docket No. 1) be **DENIED** pursuant to 28 U.S.C. §1915(e)(2)(B).

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection.

Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendant, and any counsel of record.

**FILED:** July 5, 2011.

_____
Cheryl A. Eifert
United States Magistrate Judge